UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL MICHAELI,<br><br>  Plaintiff,<br><br> v.<br><br>KENTFIELD REHABILITATION HOSPITAL FOUNDATION, et al.,<br><br>  Defendants. | Case No. 21-cv-03035-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 11 |

Plaintiff Gil Michaeli initiated this class action in state court against the following Defendants: Kentfield Rehabilitation Hospital Foundation; 1125 Sir Francis Drake Boulevard Operating Company, LLC; and Vibra Healthcare, LLC. In his complaint, he asserted a single cause of action – *i.e.*, a claim for violation of the Fair Credit Reporting Act ("FCRA"). Defendants removed the case, asserting federal question jurisdiction. *See* Not. of Removal § III.A. Mr. Michaeli now moves to remand on the basis that the Court does not have subject matter jurisdiction over his case based on lack of Article III standing.

Having considered the parties' briefs, the Court finds this matter suitable for resolution without oral argument and thus **VACATES** the hearing on the motion to remand. The motion to remand is hereby **GRANTED**.

    **I.  FACTUAL & PROCEDURAL BACKGROUND**

In his complaint, Mr. Michaeli alleges as follows.

Mr. Michaeli was an employee of Defendants. When he applied for employment, Defendants wanted to get background reports on him as part of a background investigation. *See* Compl. ¶¶ 23-24. Under the FRCA, Defendants had to give Mr. Michaeli certain disclosures

and/or get authorization from him in order to obtain the reports. *See, e.g.*, 15 U.S.C. § 1681b(b)(2)(A) (providing that "a person may not procure a consumer report . . . for employment purposes with respect to any consumer, unless – (i) a clear and conspicuous disclosure has been made in writing to the consumer . . . , in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person"); *id.* § 1681d (a)(1) (providing that "[a] person may not procure . . . an investigative consumer report on any consumer unless – (1) it is clearly and accurately disclosed to the consumer that an investigative consumer report . . . may be made").

Defendants failed to comply with the FCRA. *See* Compl. ¶¶ 23-25. For example, the disclosures and authorization form that Defendants gave "contained extraneous and superfluous language." Compl. ¶ 24. Also, the disclosures were not clearly and conspicuously made because they were not in all capital letters, they were not in boldface, they were not provided as a standalone document, and they "described multi-state law differences." Compl. ¶ 24.

According to Mr. Michaeli,

> Defendants routinely acquire criminal, consumer, and investigative consumer and/or consumer credit reports (referred to collectively as 'background reports') to conduct background checks on Plaintiff and other prospective, current and former employees and use information from background reports in connection with their hiring process without providing proper disclosures and obtaining proper authorization in compliance with the law.

Compl. ¶ 2; *see also* Compl. ¶ 43 (alleging that "Defendants have a policy and practice").

Mr. Michaeli seeks to represent a class defined as follows:

> All of Defendants' current, former and prospective applicants for employment in the United States who applied for a job with Defendants at any time during the period for which a background check was performed beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action.

Compl. ¶ 15.

As relief, Mr. Michaeli "seeks all statutory remedies pursuant to 15 U.S.C. section 1681n, including statutory penalties, punitive damages, and attorneys' fees and costs." Compl. ¶ 45; *see*

2

*also* Compl., Prayer for Relief. *See, e.g.*, 15 U.S.C. § 1681n(a) (providing that "[a]ny person who willfully fails to comply with any requirement imposed under this title [15 U.S.C. § 1681] with respect to any consumer is liable to that consumer in an amount equal to the sum of – (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 . . . (2) such amount of punitive damages as the court may allow; and (3) . . . the costs of the action together with reasonable attorney's fees as determined by the court"). Mr. Michael also seeks declaratory relief. *See* Compl., Prayer for Relief.

## II. DISCUSSION

Defendants removed the instant case from state to federal court because Mr. Michaeli has, as his only cause of action, a federal claim – namely, a FCRA violation. *See* 28 U.S.C. § 1441(a) (providing that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); *id.* § 1331 (providing that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). In his motion to remand, Mr. Michaeli argues that, even if this Court has original jurisdiction over this case, that does not preclude him from moving to remand based on a lack of subject matter jurisdiction – specifically, lack of Article III standing. *See id.* § 1447(c) (providing that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days"; but, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"); *Polo v. Innovations Int'l, Ltd. Liab. Co.*, 833 F.3d 1193, 1196 (9th Cir. 2016) (noting that "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case"); *Rotor v. Signature Consultants, Ltd. Liab. Co.*, No. 18-cv-07526-JST, 2019 U.S. Dist. LEXIS 120986, at *3-4 (N.D. Cal. July 19, 2019) (stating that "the absence of standing provides a basis for remand under § 1447(c)"); *Mirto v. Am. Int'l Grp., Inc.*, No. C-04-4998 VRW, 2005 U.S. Dist. LEXIS 42455, at *6-7 (N.D. Cal. Apr. 8, 2005) (concluding that "subject matter

3

jurisdiction," as that phrase is used in § 1447(c), means that a plaintiff must have standing).

Defendants, as the party seeking removal, have the burden of establishing subject matter jurisdiction/standing. *See Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (stating that "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute"). In deciding whether there is Article III standing, the Court bears in mind one Supreme Court case and two Ninth Circuit cases.

The Supreme Court case is *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). There, the plaintiff brought a FCRA claim against the defendant, asserting that the defendant constituted a consumer reporting agency under the statute and that the defendant, *inter alia*, prepared a consumer report on him that contained inaccurate information. The Supreme Court did not directly adjudicate whether the plaintiff had Article III standing to bring his claim but did hold that the Ninth Circuit's standing analysis was flawed because it only addressed whether the plaintiff had alleged a particularized injury: "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* at 1548. The Court noted that intangible injuries could be concrete for purposes of standing, *see id.* at 1549, and further noted that "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. However, it added,

> the demands of Article III [cannot be satisfied simply] by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.*

As for the two Ninth Circuit cases, the first is the *Spokeo* case on remand from the Supreme Court. *See Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017). Picking up where the Supreme Court left off, the Ninth Circuit noted that, for Article III standing, "there must be an

4

injury that is 'real' and not 'abstract' or merely 'procedural.' In other words, even when a statute allegedly has been violated, Article III requires such violation to have caused some real – as opposed to purely legal – harm to the plaintiff." *Id.* at 1112. The court continued:

> In evaluating Robins's claim of harm, we thus ask: (1) whether the statutory provisions at issue were established to protect his concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.

*Id.* at 1113.

On the first issue, the court had "little difficulty concluding that [the] interests protected by the FCRA's procedural requirements [at issue] are 'real' rather than purely legal creations." *Id.* at 1114. For example, "given the ubiquity and importance of consumer reports in modern life – in employment decisions, in loan applications, in home purchases, and much more – the real-world implications of material inaccuracies in those reports seem patent on their face." *Id.* On the second issue, the Ninth Circuit recognized that there could be a FCRA procedural violation that "would *not* materially affect the consumer's protected interests in accurate credit reporting." *Id.* at 1116 (emphasis added). "[E]ven if Congress determined that inaccurate credit reporting generally causes real harm to consumers, it cannot be the case that every trivial or meaningless inaccuracy does so." *Id.* That being said, the plaintiff in *Spokeo* had sufficiently shown standing

> because it is clear to us that Robins's allegations relate facts that are substantially more likely to harm his concrete interests than the Supreme Court's example of an incorrect zip code. Robins specifically alleged that Spokeo falsely reported that he is married with children, that he is in his 50s, that he is employed in a professional or technical field, that he has a graduate degree, and that his wealth level is higher than it is. It does not take much imagination to understand how inaccurate reports on such a broad range of material facts about Robins's life could be deemed a real harm. For example, Robins alleged that he is out of work and looking for a job, but that Spokeo's inaccurate reports have "caused actual harm to [his] employment prospects" by misrepresenting facts that would be relevant to employers, and that he suffers from "anxiety, stress, concern, and/or worry about his diminished employment prospects" as a result.

*Id.* at 1117; *see also TransUnion LLC v. Ramirez*, No. 20-297, 2021 U.S. LEXIS 3401, *21, *37 (June 25, 2021) (emphasizing that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court";

5

ultimately holding that class members whose credit reports (containing misleading information) were actually disseminated to third-party businesses suffered a concrete harm, but not those whose reports were not disseminated (even if they contained misleading information)) (emphasis in original).

The other Ninth Circuit case that merits consideration is *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). (This case was decided after the Supreme Court's decision in *Spokeo* but before the Ninth Circuit's *Spokeo* decision on remand.) The facts in *Syed* are very similar to those in the instant case. The plaintiff applied for a job with the defendant, and the defendant gave a disclosure form to the plaintiff informing him, *inter alia*, that "his credit history and other information could be collected and used as a basis for the employment decision." *Id.* at 497. The plaintiff sued the defendant on the basis that it had violated the FCRA by not meeting the disclosure requirements of § 1681b(b)(2)(A); for example, the defendant's inclusion of a "liability waiver violated the statutory requirement that the disclosure document consist 'solely' of the disclosure." *Id.*

On appeal before the Ninth Circuit, the court held first that the plaintiff had established Article III standing because he had alleged more than a "'bare procedural violation.'" *Id.* at 499. The Ninth Circuit noted first that

> [t]he disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates *a right to information* by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. [In addition,] [t]he authorization requirement, § 1681b(b)(2)(A)(ii), creates *a right to privacy* by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check.

*Id.* (emphasis added). The court then pointed out that the plaintiff had

> alleged in his complaint that he "discovered Defendant M-I's violation(s) within the last two years when he obtained and reviewed his personnel file from Defendant M-I and discovered that Defendant M-I had procured and/or caused to be procured a 'consumer report' regarding him for employment purposes based on the illegal disclosure and authorization form." This allegation is sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(i)-(ii) *because it indicates that Syed was not aware that he was signing a*

6

> *waiver authorizing the credit check when he signed it. Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute.* Therefore, Syed did allege a concrete injury . . . .

*Id.* at 499-500 (emphasis added).

In the wake of *Syed*, many district courts have evaluated whether it can reasonably be inferred from a plaintiff's complaint whether the disclosure at issue caused the plaintiff to be confused. *See, e.g.*:

- *Bercut v. Michaels Stores, Inc.*, No. 17-cv-01830-PJH, 2017 U.S. Dist. LEXIS 101373, at \*12 (N.D. Cal. June 29, 2017) (stating that "*Syed II* confirms . . . that Article III requires some allegation of actual harm, e.g., that plaintiff was 'confused' by the disclosure or that she would not have signed the authorization had it been presented in a FCRA-compliant format"; finding that, in the case under consideration, "there is no basis to infer actual harm" and therefore remanding the case because there were substantial doubts about standing).
- *Limson v. Bridge Prop. Mgmt. Co.*, 416 F. Supp. 3d 972, 990 (N.D. Cal. 2019) (stating that "[d]istrict courts that have applied *Spokeo* to FCRA claims based on disclosures that are alleged to be unclear or otherwise out of compliance with the FCRA as to the form of the disclosure have generally held that in order to have standing the consumer must 'allege some actual harm, such as being confused or misled by the improperly formatted disclosure'").
- *Del Toro v. Centene Corp.*, No. 19-CV-05163-LHK, 2020 U.S. Dist. LEXIS 59290, at \*9 (N.D. Cal. Apr. 2, 2020) (concluding that "Plaintiff makes no allegation that the alleged procedural violation of 15 U.S.C. § 1681b(b)(2) 'actually harm[ed], or present[ed] a material risk of harm' to[] the interests protected by the FCRA" – *e.g.*, "Plaintiff does not allege that she even read the forms at issue, or that the failure to provide a standalone disclosure confused her or affected her in any way").

(Generally speaking, confusion goes more to the right to information being violated rather than the

7

1  right to privacy – at least in the first instance.)

2  In the instant case, Defendants seize on *Syed* and its progeny, asserting that Mr. Michaeli

3  has alleged confusion as a result of the disclosure that violated the FCRA. The problem for

4  Defendants is that the allegations on which they rely *do* talk about confusion for consumers

5  generally but *not* confusion on the part of Mr. Michaeli specifically. For example:

> 24.   Defendant[s] did not provide legally compliant disclosure and authorization forms to Plaintiff and the putative class as they contained extraneous and superfluous language. Additionally, the inclusion of the extraneous provisions causes the disclosure to be "clear and conspicuous" and "clear and accurate," and thus violates Sections 1861b(b)(2)(A) and 1681d(a). Specifically, the disclosure does not comply with the "clear and conspicuous" requirement because (1) the disclosure is not in all capital letters; (2) the disclosure is not in boldface to set off the required disclosure; (3) the disclosure is part of an employment application and is therefore not a standalone document; and (4) the disclosure describes multi-state law differences which is not a permissible element in an FCRA disclosure **and reduces clarity as to what rights each applicant or employee possesses**.
>
> . . . .
>
> 26.   The FCRA disclosure should be a standalone document and, if desired, a bare authorization to obtain information, without being weighed down by irrelevant state law references, **confusing and contradictory rights summaries**, and impermissible references to side documents containing information not set forth in the attempted disclosure.

Compl. ¶¶ 24, 26 (emphasis added). Arguably, it is a reasonable inference from the above

allegations that Mr. Michaeli himself was confused if people generally would have been confused.

However, Ninth Circuit case law indicates that "[f]ederal jurisdiction must be rejected if there is

any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566

(9th Cir. 1992).

Confronted with this problem, Defendants suggest that it is almost a necessary inference

that Mr. Michaeli was confused because he has sought monetary damages as relief, including

compensatory damages and restitution. *See* Compl. ¶ 3 ("Plaintiff, individually and on behalf of

all other[] similarly situated current, former and prospective employees, seeks compensatory and

punitive damages due to Defendants' systematic and willful violations of the FCRA."); Compl. ¶ 4

("This Court has subject matter jurisdiction to hear this case because the monetary damages and

8

restitution sought by Plaintiff from Defendants['] conduct exceeds the minimal jurisdiction of the Superior Court of the State of California."). In other words, Defendants assert that it is not plausible that Mr. Michaeli suffered compensatory damages or would be entitled to restitution *unless* he was confused. But it is not clear from the above allegations that Mr. Michaeli is actually seeking compensatory damages or restitution. Notably, in the prayer for relief, Mr. Michaeli mentions only statutory damages (*i.e.*, statutory penalties, punitive damages, and attorneys' fees), and not compensatory damages or restitution. *See* Compl. ¶¶ 45-46; Prayer for Relief. These statutory damages are recoverable even in the absence of actual confusion or concrete harm. Furthermore, even if Mr. Michaeli meant to include compensatory damages and restitution as relief, it is not clear that he sought such relief for himself specifically, as opposed to members of the putative class. The fact that he did not plead confusion on his part suggests that he did not seek this relief for himself. Doubts regarding removal should weigh in favor of remand.

### III. CONCLUSION

Accordingly, the motion to remand is granted. This order disposes of Docket No. 11.

The Clerk of the Court is ordered to remand the instant case back to Marin County Superior Court and close the file in this case.

**IT IS SO ORDERED**.

Dated: July 7, 2021

_____
EDWARD M. CHEN
United States District Judge